

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| UNITED STATES OF AMERICA | |
|---|---|
| v. | NO. 3-18CR-319-B |
| PATRICK O. HOWARD | |

# INDICTMENT

The Grand Jury charges:

## Introduction and Summary

1. Beginning no later than January 2015 and continuing until on or about April 2017 (the Relevant Period), in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Patrick O. Howard**, aiding and abetting persons known and unknown to the Grand Jury, knowingly, willfully, and with intent to defraud, used and employed a scheme, artifice, device, and contrivance to defraud investors in connection with sales of securities.

2. During the Relevant Period, **Howard** owned Howard Capital and OE Capital, Dallas, Texas companies through which **Howard** operated three investment funds, (1) Insured Liquidity Partners CFG I, LLC (CFG I), (2) Insured Liquidity Partners CFG II, LLC (CFG II), and (3) OE Capital Ventures, LLC (OE Fund) (collectively, the Funds).

3. **Howard** managed the Funds personally and through Howard Capital and OE Capital.

Indictment - Page 1 of 16

4. **Howard** exercised ultimate authority over Howard Capital, OE Capital, and each of the Funds, including their bank accounts, overall direction, content of their public statements, and the decision to disseminate such statements.

5. During separate offering periods during the Relevant Period, each Fund issued membership units, and **Howard**, personally and through employees of OE Capital and third-party brokers, offered and sold membership units to investors for $50,000 apiece. Investors were told that the Funds would invest proceeds from unit sales into third-party companies and that the Funds stood to profit when the companies paid revenue interests that the Funds were entitled to receive.

6. In connection with the sale of membership units in the Funds, **Howard**, acting both personally and through employees and the third-party brokers, misled, deceived, and defrauded investors by misrepresenting, and by failing to disclose, material facts concerning the investments.

7. Among other material facts, **Howard** knowingly, willfully, and with intent to defraud, misled and deceived investors about earning a minimum return of 12% annually, paid quarterly; about the uses to which **Howard** had put and would put the investors' funds; about **Howard** being a Registered Investment Advisor, about OE Capital having average earnings of 20%; about the Funds depending on "insurance based assets purchased to offset company underperformance" or having "insured liquidity" to protect investors' investments and minimum returns; and about the Funds' purchase of real estate

to mitigate investors' risk.

8. **Howard** also caused investors who elected to reinvest quarterly earnings to receive phony account statements showing that their accounts had been credited the minimum preferred return, when they had not been. At the same time, investors who chose to receive their quarterly earnings as distributions were actually given Ponzi payments, that is, they were paid with the investments of later investors rather than with actual earnings of the Funds.

9. In reality, and as **Howard** knew, the Funds did not provide investors with a minimum return of 12% annually, they did not average 20% growth, and account statements showing that investors accounts had been credited the alleged minimum quarterly return were false and fraudulent, because the Funds' combined earnings rate from inception through December 31, 2016 was just 0.25%; **Howard** never was a Registered Investment Advisor, either with the Securities and Exchange Commission or with any state; any insurance that the Funds purchased did not protect investors' principal or their alleged minimum earnings; not a single dollar of investor funds was ever used to purchase real estate; and **Howard** was spending investors' money on things the investors did not approve or even know about, including Ponzi payments to earlier investors, a nearly $200,000 payment to buyout a former business partner who was temporarily associated with CFG I, an approximately $225,000 payment to **Howard**'s personal bank account that was neither salary nor bonus, and corporate and business expenses that

greatly exceeded the limitations conveyed to investors.

## Manner and Means

10. The manner and means of the fraudulent scheme, artifice, device, and contrivance included the following things.

## The Securities

11. In soliciting investors for each of the Funds, **Howard**, both personally and through employees and the third-party brokers, distributed a partnership agreement and private-placement memorandum (PPM), describing the Fund, its management, and its investment objectives. **Howard**, directly or indirectly, also distributed marketing documents (Investor Packet) to investors.

12. Each of the PPMs provided that the relevant Fund would raise money by selling securities in the form of "membership units" for $50,000 apiece, with a three-year investment term.

13. For CFG I, the PPM specified that the Fund would use the offering proceeds "to purchase royalty revenue interest from CFG Inc. and its affiliates and associates."

14. For CFG II and OE Fund, the PPMs provided that the Funds would use offering proceeds to invest in unspecified third-party companies—referred to as portfolio companies—in exchange for a right to receive a portion of the companies' future revenue.

15. For each Fund, the membership units sold by **Howard** constituted an investment

contract. Investors contributed money, which was pooled, in exchange for investment returns that the Funds' investments in third-party companies supposedly would yield.

16. Investors' expectations of profits were based solely on the efforts of **Howard** and other third-parties, and investors had no control over the management of the Funds.

17. Under the securities laws of the United States, investment contracts are securities.

## Sales of Membership Units

18. Through Howard Capital, **Howard** solicited investors in person and by telephone to raise money for CFG I.

19. For CFG II and OE Fund, **Howard** solicited investors personally. He also retained third-party brokers to solicit investors in exchange for a 5% sales commission after they were trained by OE Capital.

20. **Howard** and sales agents he employed at OE Capital also solicited investors for OE Fund through seminars and by email.

21. Investors paid their money to **Howard** through check or by wire.

22. In this way, **Howard** directly and indirectly offered and sold membership units in CFG I, CFG II, and OE Fund to more than 100 investors and raised more than $13 million, as set forth in approximate amounts below:

| Fund | Approximate Offering Period | Investors | Amount Raised |
|---|---|---|---|
| CFG I | January 2015 – January 2016 | 18 | $833,993 |
| CFG II | August 2015 – February 2016 | 36 | $4,297,398 |

| OE Fund | February 2016 – December 2017 | <u>65</u> | $7,960,585 |
|---|---|---|---|
| | **Total:** | **119** | **$13,091,976** |

23.     During the term of each investment, **Howard** caused quarterly account statements to be sent to investors via the mails. **Howard** also caused payments to be made to investors who elected to receive quarterly earnings as distributions.

## Misrepresentations and Omissions of Material Facts

24.     In connection with the sale of membership units in the Funds, **Howard** directly and indirectly made to investors and prospective investors, and caused to be made to them, a number of untrue representations of material facts. Howard also directly and indirectly failed to state material facts, and caused others to fail to state material facts, thus causing affirmative statements that were made to investors and prospective investors to be materially misleading under the circumstances, including the following.

25.     Throughout the Funds' offerings, **Howard** represented to investors and potential investors that they would receive minimum returns of 12% annually for three years.

26.     **Howard** made these representations to investors and potential investors orally, in PPMs and partnership agreements, in the Investor Packet, and in radio advertising, the content of which he reviewed and approved.

27.     At the time that **Howard** made these representations about investors' minimum returns, he knew that the Funds' actual earnings were abysmal—a combined earnings rate

of just 0.25% from inception through December 31, 2016.

28. Accordingly, **Howard**'s representations about investors' minimum returns were materially false and misleading because they failed to disclose that the Funds' actual earnings were wholly insufficient to pay the promised returns.

29. **Howard**, in the Investor Packet, represented to investors and potential investors that OE Capital's average growth was 20%.

30. In reality, as **Howard** knew, OE Capital based the 20% return on a forecasting model, but failed to disclose that it was a forecast, not a reflection of actual average growth as represented.

31. Accordingly, **Howard**'s representations to investors and potential investors about OE Capital's average growth were materially false and misleading.

32. During the term of each investment, **Howard** caused quarterly account statements to be sent to investors via the mails. For investors who chose to reinvest earnings, the account statements showed that their account balances had been credited a "Preferred Return" equal to the minimum return of 12% annually.

33. As **Howard** knew, however, the Funds generated only $33,334 in total earnings as of December 31, 2016, an amount far less than the approximately $1 million in earnings that the Funds had allegedly reinvested.

34. Accordingly, account statements showing that investors' accounts had been credited "Preferred Returns" were materially false and misleading because little to no

earnings existed, let alone were reinvested as represented.

35. For those investors who received distribution payments, the account statements described the payments as "Preferred Returns."

36. In reality, and as **Howard** knew, the payments were derived from payments made by other investors to purchase membership units rather than investment returns.

37. Accordingly, the account statements were materially false and misleading because they described Ponzi payments as investment returns, and **Howard** failed to disclose the true source of the payments.

38. **Howard** repeatedly represented to investors and potential investors that insurance protected investors' principal and guaranteed their minimum annual return of 12%.

39. Among other representations about insurance, the CFG I partnership agreement referred to offering proceeds as "insured liquidity."

40. The OE Fund PPM referred to "insurance based assets" that the Fund had "purchased to offset company underperformance."

41. The CFG II PPM and the Investor Packet stated that "the Company is backing the minimum preferred yield and principal with insurance based assets" thus providing "assurance of the return of principal and minimum yield distribution."

42. And Howard told investors and prospective investors that insurance guaranteed their minimum 12% annual return.

43. These representations were materially false and misleading because, as **Howard**

knew, none of the Funds purchased insurance that protected investors' principal or minimum yield.

44. **Howard** represented to investors and potential investors that he was a Registered Investment Advisor.

45. This representation was materially false and misleading because **Howard** has never been registered with the Securities and Exchange Commission or any state as an investment advisor.

46. **Howard** represented to investors and potential investors that the Funds invested in real estate as a "backstop" or "stop loss" against underperformance.

47. These representations were materially false and misleading because, as **Howard** knew, not a single dollar of investor funds was ever used to purchase real estate.

48. The PPM for each Fund represented that a certain percentage of investor funds would be invested in portfolio companies.

49. In reality, and as **Howard** knew, the Funds invested a much smaller percentage of investor money in portfolio companies than was represented to investors and prospective investors. **Howard** failed to disclose this material fact to investors and prospective investors.

50. **Howard** also failed to disclose to investors and prospective investors that he caused investor money that was neither salary nor bonus to be transferred to his personal bank account, to be used to buyout a former business partner, and for other purposes that

investors did not authorize or even know about.

## Counts One through Five
## Securities Fraud and Aiding and Abetting
### (15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2)

As to each of Counts One through Five listed below, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Patrick Howard**, aiding and abetting persons known and unknown to the Grand Jury, willfully, knowingly, and with intent to defraud, by use of the mails and means and instrumentalities of interstate commerce, in connection with sales of membership units to the investors identified below on or about the dates stated below, directly and indirectly:

- employed devices, schemes and artifices to defraud;

- made and caused to be made untrue statements of material facts and omitted to state material facts that were necessary in order to make statements that were made not misleading in light of the circumstances under which the statements were made; and

- engaged in acts, practices, and courses of business that operated and would operate as a fraud and deceit on a person,

all as alleged in Paragraphs 1 through 50, which are incorporated herein by reference.

| Count | Date of Wire (On or about) | Investor |
|---|---|---|
| 1 | July 17, 2015 | A.V. |
| 2 | July 24, 2015 | A.V. |
| 3 | May 7, 2015 | J.B. |

| 4 | July 2, 2015 | J.B. |
|---|---|---|
| 5 | March 15, 2016 | L.C. |

Each in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2.

## Counts Six through Fourteen
## Mail Fraud and Aiding and Abetting
## (18 U.S.C. §§ 1341 and 2)

Beginning no later than January 2015 and continuing until on or about March 2017, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Patrick O. Howard**, aiding and abetting persons known and unknown to the Grand Jury, knowingly and with intent to defraud, devised and intended to devise a scheme and artifice to defraud investors and to obtain money and property from investors by means of materially false and fraudulent pretenses, representations, and promises.

### Manner and Means

As the manner and means of the scheme and artifice, the Grand Jury adopts, re-alleges, and incorporates herein by reference all allegations set forth in Paragraphs 1 through 50 above.

### Mailings

As to each of Counts Six through Fourteen below, on or about the date stated, in the Dallas Division of the Northern District of Texas, **Howard**, knowingly and with intent to defraud, for the purpose of executing and attempting to execute the aforementioned scheme and artifice, caused to be delivered by the United States Postal Service or an interstate commercial carrier, to the address listed below, among other things, the contents stated below.

| Count | Date | Address | Contents |
|---|---|---|---|
| 6 | April 1, 2016 | A.V. Lewisville, TX OECP-1058 | Statement for April 1, 2016 for account of A.V. |
| 7 | April 1, 2016 | A.V. Lewisville, TX OECP-1010 | Statement for April 1, 2016 for account of A.V. |
| 8 | January 1, 2017 | E.S. Saint Henry, OH OECP-1097 | Statement for January 1, 2017 for account of E.S. |
| 9 | January 1, 2017 | J.B. Carrollton, TX OECP-1046 | Statement for January 1, 2017 for account of J.B. |
| 10 | October 1, 2016 | J.B. Carrollton, TX OECP-1046 | Statement for October 1, 2016 for account of J.B. |
| 11 | July 1, 2016 | L.C. Land O' Lakes, FL OECP-1068 | Statement for July 1, 2016 for account of L.C. |
| 12 | October 1, 2016 | M.R.-H. Clearwater, FL OECP-1091 | Statement for October 1, 2016 for account of M.R.-H. |
| 13 | January 1, 2017 | M.R.-H. Clearwater, FL OECP-1091 | Statement for January 1, 2017 of M.R.-H. |
| 14 | January 1, 2016 | R.J. Mesquite, TX OECP-1001 | Statement for January 1, 2016 of R.J. |

Each in violation of 18 U.S.C. §§ 1341 and 2.

## Forfeiture Notice
## (18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c))

Upon conviction for any of the offenses alleged in Counts One through Fourteen of this Indictment, the defendant, **Patrick Howard**, shall forfeit to the United States any property, real or personal, constituting or derived from proceeds traceable to the respective offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), if any of the above property subject to forfeiture, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty, it is the intent of the United States of America to seek forfeiture of any other property of the defendant up to the value of the above described property subject to forfeiture.

A TRUE BILL

_____
FORPERSON

ERIN NEALY COX
UNITED STATES ATTORNEY

_____
ANDREW O. WIRMANI
Assistant United States Attorney
Texas Bar No. 24052287
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Tel: 214.659.8600
Fax: 214.659.8809

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

PATRICK O. HOWARD

INDICTMENT

15 U.S.C. §§ 78j (b) and 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2I
Securities Fraud and Aiding and Abetting
(Counts 1 – 5)

18 U.S.C. §§ 1341 and 2
Mail Fraud and Aiding and Abetting
(Counts 6 – 14)

14 Counts

A true bill rendered

DALLAS                                                                                              FOREPERSON

Filed in open court this 26th day of June, 2018.

**No Warrant Needed**

UNITED STATES MAGISTRATE JUDGE
No Criminal Matter Pending